GREEN, J.
The principal question is, Whether Walker’s judgments overreached the deeds under which the appellant claims? This precise question was determined in the affirmative in The Mutual Assurance Society v. Stanard; but it is said, that, in that case, the point passed sub silentio, and without discussion ; and that, although at the common law, the whole term was considered as but one day, and all the judgments therein related to the first day thereof, and overreached all intermediate conveyances of and charges upon the debtor’s lands; yet that was because the time when the judgment was actually rendered, never appeared on the record, all being enrolled as of the term generally, or as of the first day of the term: that in consequence of our statutes, requiring that the proceedings of all our courts shall be signed by the presiding judge, either daily at the adjournment of the court, or the next morning at its sitting, and that all office judgments, not set aside during the term, shall be entered as judgments of the last day of the term, the actual time of the entering of every judgment necessarily appears on the record, and consequently takes away the foundation of that rule of the common law. This general principle of the common law, like many others, is of such remote antiquity, and so long recognized without dispute, that the reasons and policy on which it was founded, are, in a great degree, left to conjecture. One reason is assigned arguendo in the case of Wynne v. Wynne, cited at the bar: that all the suitors whose cases are in such a ^situation as to entitle them to a judgment on the first day of the court, ought to be in the same situation, and none to have any *330 advantagé over another, and as it is impossible for the court to give judgment in all such cases in one day, the only means of putting them upon a footing of equality, is to refer all given in the same term to the first day, and give them the same effect as if they were really so. Another reason may have been to prevent debtors from withdrawing their property from the effect of judgments against them, by alienations made after it was known that in the course of the term a judgment would pass. Whatever was the foundation of the rule, it operated uniformly as between different creditors, and the creditors of and purchasers from the debtor, without any exception, so far as I have been able to discover, until the case of purchasers was provided for by the statute 29 Car. 2, Ch. 3, | 14, which required, that the true date of all judgments should be noted on the margin of the roll, and provided that they should bind, as to purchasers, only from such date. Before that statute, judgments confessed in vacation, under powers of attorney previously given for that purpose, related to the first day of the preceding term, and overreached intermediate aliena-tions. To remedy this mischief, of alloying judgments confessed upon powers of attorney, when no previous suit was depending, to overreach intermediate aliena-tions, was the chief object of the provision of the statute on that subject, as appears by its preamble. An attempt was made to remedy this mischief, partially, before the statute, by the power of the court, in an anonymous case in Sid. 222, in which a judgment, entered in vacation, upon a warrant of attorney given in vacation, was set aside, because, relating to the first day of the preceding term, it would be a great danger to purchasers; although it was insisted, that it might be held to be good against the party, and void as to purchasers, which was denied, and the judgment was set aside, because if it remained and bound the party, it must also bind purchasers from him. The courts in England, always had the *means of ascertaining the dates of all proceedings in the suits depending in them, as appears from the frequent questions which have been made as to the effect of those proceedings. Thus, a statute acknowledged the 22d January, after the first day of the term, was overreached by a judgment on the 23rd. Standford v. Cooper, Het. 72; Cro. Car. 102; Hutt. 95; Garrard v. Norris, Latch, 53. So, in Jenk. 250, cited 18 Vin. Abr. Relation, D. pl. 3, p. 293, a case .is stated, where a fine levied after a statute acknowledged in the same term, overreached the statute. But cases might occur, in which judgments might be rendered during a term, which could not by possibility relate to the first day; as where it appears, that the plaintiff’s case was notin a condition for a judgment on the first day, if the court had been prepared to hear it, and some further proceeding was indispensably necessary to mature his case for judgment. As, in the case of a common recovery, the praecipe being returned to the first day of the term, and the tenant appearing and vouching to warranty, and a summons ad warrantizandum awarded returnable to a future day in the term; if the vouchee die before the return day, the recovery is void; Wynne v. Wynne, 1 Wils. 42. Or, if the return day be Sunday, which is not dies juridicus, and the vouchee dies on that day, and a judgment is afterwards given, it is void, because no judgment could lawfully be given on Sunday. But if the return day had been a juridical day, upon which a valid judgment could have been given, the subsequent judgment would have related to the return (essoign) day, and been good, notwithstanding the death of the vouchee on the return day; Swann v. Broome, 3 Burr. 1596. In these cases, there was an impossibility that the judgments should have been given on the first day of the term, the vouchees not appearing gratis, and upon that impossibility the judgments turned. Tidd’s prec. 376. These are the only adjudged cases I have met with, in which exceptions have been allowed to the general rule; and they are founded upon obviously good reasons, that might very *well apply to all cases, in which it appeared that the plaintiff’s case could not be matured for judgment on the first day of the term. There is a dictum of lord Holt in 3 Salk. 212, repeated by counsel arguendo, and admitted by the court, in Miller v. Bradley, 8 Mod. 190, that the relation does not exist, if there is a memorandum to the contrary; as where there is a continuance of the cause until another day in the same term. But the occasion or circumstances, under which this dictum fell from lord Holt, or the purpose to which it' was applied, is not stated bj Salkeld. It is hardly sufficient to overturn the common law doctrine, applied particularly to the lien of judgments, that the whole-term is in law but one day, and that the first day.
Our legislature, in incorporating into our statutes, such of the english statutes as it thought fit to adopt, and abrogating all others, has omitted the provision <oi the statute 29 Car. 2, in respect to the effect of judgments as to purchasers, probably for this reason, that the chief mischief intended to be remedied by it, the confession of judgments upon warrants of attorney when no previous suit was depending, could not exist here, because our statutes had long prohibited such judgments.
Our statutes directing the daily proceedings of the courts to be signed by the presiding judge or justice, declare the purpose of that requisition to be, to prevent errors in entering up judgments, and can hardly have intended to abrogate, incidentally, the rule of the common law, which considers the whole term as one day. I think, we ought to adhere to the decision in The Mutual Assurance Society v. Stanard.
The interests of P. Coutts, and of the purchasers from him claiming under the deeds of the 28th Eebruary 1821, were purely equitable, the legal title being in the trustee under the marriage settlement of 1799, who held it upon such terms, for the use of the appellant and the others interested in the property, that his right to retain the possession and controul, and to receive the profits of the property, necessarily continued, until the proportions of the per *331 sons *entitled thereto, after the death of the grantor, were ascertained, and their due shares of the charge of the annuity payable to the appellant, were also ascertained, and properly charged upon their respective proportions of the property. This was not such a trust as could be taken under our statute subjecting trusts to legal executions; 1 Rev. Code, ch. 99, 4 30, p. 370. That was taken from a similar provision in the statute of frauds of 29 Car. 2, but is more extensive in its operation, including trusts of personal as well as real property, whilst the english statute only embraces trusts of real property ; and our statute binding the trusts to all intents and purposes, as if they were legal estates, from the date of the judgment, whilst the english statute bound them only from the date of the execution. Hunt v. Coles, 1 Com. Rep. 226. But in respect to the quality of the estate there is no difference between the effect of the statutes; and in Rngland, their statute has been held not to extend to an equity of redemption. Plucknet v. Kirk, 1 Vern. 411; Sawley v. Gower, 2 Id. 61; Plunket v. Penson, 2 Atk. 290, Sudg. law vend. 337, nor to a trust to sell and pay debts, Sudg. 339, and, a fortiori, not to such a trust as this, not for the debtor only, but for him and another entitled paramount to him.
But although this equity of P. Coutts could not be taken in execution at law, it was, upon the general principles of a court of equity, bound in equity, as it would have been bound at law, if it had been a legal title; and the judgment creditor has a right to insist upon the execution of the trust for the satisfaction of his judgments, precisely as the debtor would have had a right to have it executed for his own benefit, if there had been no judgment. Thu a a judgment creditor has a right to redeem a mortgage, or any other incumbrance. And amongst incumbrancers, where all having nothing but equities, and none the legal title, their equities being equal, they are entitled to satisfaction according to the priority of their incumbrances in point of time, upon the maxim qui prior est in tempore, potior est in jure. Churchill v. Grove, Nels. *Ch. Rep. 89; 1 Ch. Ca. 35; 2 Ch. Rep. 180; Mackreath v. Symmonds, 15 Ves. 353; Haleys v. Williams, 1 Leigh, 140.
It only remains to inquire, whether, admitting that judgments relate to the first day of the term, and overreach intermediate conveyances at law, in cases where they can be executed without the aid of a court' of equity, the same rule ought to be applied to the case of a judgment creditor, who is under the necessity of resorting to a court of equity for its aid? It is said, that relations are not favoured in equity, and never allowed to operate to the prejudice of third persons. It is true, that fictions of law operating to the prejudice of third persons, are less favoured in courts of equity than of law; yet the same maxim, that relations ought not in general to be allowed to prejudice third persons, prevails at law, but it was never applied there to restrain the operation of a judgment upon the debtor’s property, in favour of a purchaser, until that was done by statute. And a court of equity, considering a judgment as operating a lien in equity upon the equitable rights of the debtor, as it would operate upon them at law if they were legal, seems to have followed the law in all its consequences; unless in cases of purchasers of the equity together with the legal estate, without notice of the judgment; in which case, the equity being equal, and the purchaser having the advantage of the legal title, a court of equity leaves the parties to their legal rights. I think the judgment overreached the conveyances in equity, as they would at law, if the estate of P. Coutts in the property in question, had been legal.
But' that did not authorise the court to sell P. Coutts’s interest in the property, out and out, subject to the annuity, as was directed by the chancellor’s decree in this case. It is true, that there being two contemporary judgments, the whole of his interest was bound; a moiety by each: and, if there had been a previous mortgage or other incumbrance, under which the creditors entitled to them could have had the property sold, the appellee could have insisted upon such sale, *and the satisfaction of the prior incumbrances out of the proceeds, and of his judgment out of the surplus, that being the effect of his right to redeem the prior incumbrances. But the annuity charged in this case, upon the property, not only did not charge it so as to subject it to sale, being payable out of the profits of the property only, but was in its nature irredeemable, for the annuitant could not be compelled to take a gross sum in lieu of the annuity. The only course, therefore, left for the court, was to decree that the trustee M’Craw, or a receiver appointed by the court, if that should appear to be proper, should take possession of the whole property, and receive the rents and profits thereof, and out of the net proceeds, first pay Mrs. Coutts her annuity of 500 dollars as it shall accrue, and the arrears thereof if any; next pay whatever may be found justly due to the trustee M’Craw, if any thing, for his fees, commissions and necessary expenditures as trustee under the marriage settlement of 1799, not by force of the deed of trust of the 28th February 1821, but of his original rights under the deed of 1799; then, dividing the surplus according to the rights of the parties entitled under the deed of 1799, pay the proportion thereof ascertained to belong to P. Coutts, to the appellee Walker, from time to time, until his judgments with interest and costs, and his costs in this suit, shall be fully satisfied; and, lastly, the residue to the parties who may be entitled thereto. And to this end, all persons entitled to claim any interest in the property under the deed of 1799, should be made parties.
In the deed of trust for the benefit of the appellant, one of the purposes is stated to be, to indemnify her against a bond executed by her with P. Coutts, and as his surety, to Burton, for the amount of an execution of ca. sa. in his favour against P. Coutts, and which had been executed. And it is suggested that the lien of the decree upon which the ca. sa. issued, and which had precedence of Walker’s judgments, *332 should be considered as still subsisting as to her, and that she should, by substitution to Burton’s rights, have the ^benefit of it as against the appel-lee. But no such claim is set up in the bill; and if it were, I do not think it could be supported. The very act by which she became bound as surety, destroyed, and was intended to destroy, the lien of the decree, and from that moment the plaintiff could take no further execution upon it, or enforce it in any other way. It is like the case of a surety engaging as such, upon condition of the creditor’s releasing a lien upon the debtor’s property, and such a release executed contemporarily with the instrument by which the surety becomes bound. This is not at all like the case of Fox v. Rootes (decided in this court, Dec. 15, 1828, MS). There a ca. sa. was executed upon a decree against an administrator, who swore out of jail surrendering nothing: the surety in the administration bond paid the debt, and procured an assignment of the decree, and was substituted to the original lien of the decree against other creditors, who had a deed of trust of a subsequent date upon the debtor’s land, before he swore out, but that very deed of trust provided for the satisfaction of the decree, together with other debts: and the court held, that the decree creditor ought not to lose his original preference over the deed of trust, by his unavailing effort to procure satisfaction out of other property of the debtor, and thus to benefit the other creditors provided for by that deed. No such reason exists in this case, for reviving in equity, the lien of a judgment or decree extinct at law, and barred by matter of record, and that at the instance and with the privity óf the surety, and the intended consequence of the very act of becoming surety.